**TRADERS & GENERAL INSURANCE COMPANY, Appellant,**

v.

**Edgar M. PITTSFORD, Appellee.**

**No. 5810.**

Court of Civil Appeals of Texas.

El Paso.

Feb. 1, 1967.

Rehearing Denied March 1, 1967.

Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., Dallas, for appellant.

John R. Lee, Kermit, John Howze, Monahans, for appellee.

## OPINION

FRASER, Chief Justice.

This is a Workmen's Compensation case in which the plaintiff, Edgar M. Pittsford, appellee here, recovered judgment on a jury verdict for total and permanent disability. Appellant's amended motion for new trial was overruled and appeal has been duly perfected. Appellee claims that his injury was sustained while working at or on a drilling rig. The occurrence of the injury is not contested, the case having been tried on matters relating to the amount and extent of appellee's injury.

Appellant maintains that the appellee, who apparently was hurt on the first night that he went to work on a drilling rig, was not totally and permanently disabled. In the first two points appellant sets out that appellee Pittsford showed more earnings after the injury than before, alleging that Mr. Pittsford averaged around $26.00 a week prior to the accident, and that from the month following his injury and on up to the trial, he was earning more than three times that amount. Appellant also points out that Dr. Gibson, who was appellee's doctor, referred Mr. Pittsford to a specialist in neurosurgery, one Dr. Hooker. Dr. Hooker was not used as a witness, but appellee's doctor, Dr. Gibson, testified that Dr. Hooker did not find any neurological involvement and basically did not agree with Dr. Gibson's diagnosis relative to appellee's condition. Dr. Gibson is a general practitioner, and Dr. Hooker a specialist. Appellant also emphasizes the fact that Pittsford, in 1963, which was some time before the injury herein concerned, sustained injuries in falling from a moving truck, such injuries including broken bones; and that later in the same year, 1963, he injured his right foot while riding in a sand buggy and developed an infection therefrom; and that subsequent to the date of the injury in controversy, he had an accident which rendered his car totally useless, but we do not find any evidence there of personal injury. In this connection Pittsford himself testified that the car was damaged so badly that it was not worth repairing.

We believe that these two points must be overruled. This, of course, is a fact question and was determined by the jury selected to hear the case and pass on these matters. It appears from the record that appellee Pittsford testified that after his injury at the well, he worked at various jobs under difficult health conditions, including pain, and that he was under a compelling economic necessity to do so. Among other things Pittsford testified that he had to abandon a cervical collar when

he went to work as a barber because such collar practically immobilized him so that he couldn't turn his head or move around easily; that he had to wear, and was wearing at the time of the trial, a back brace or corset; that he had to wear the corset constantly, and that the one he had on at the time of the trial was the third one he had used because he had worn out two others; and that he was in pain at the time of the trial. He described the pain in his neck, back and shoulder; that he had to wear the corset all the time and occasionally had to wear it while trying to sleep. That he was in the hospital in August (presumably in 1964) for eleven days, and that Dr. Gibson was in constant attendance during that period; that he had had to take treatment described as traction and ultrasonic, as well as pain shots; that his original vocation was that of barber, and that subsequent to his injury he worked for several barber shops and, although he made more money than he had made before the injury, that he couldn't work steadily because he would have to stop work, replace the cervical collar and go into another room and lie down. That he worked for two other barber shops, but that he couldn't work on children or do "flatttops" because he couldn't move around to do this type of work. The last barber shop in which he worked was one owned or operated by a Mr. Dave Melton. Mr. Melton testified that appellee worked for him for several months; that he had to turn down customers like small children; that he, Melton, had observed appellee after he had tried to work on flattops and children, and that he would see Mr. Pittsford sitting down with his whole shoulder and arm trembling or shaking, and that because of Pittsford's inability to work steadily, as did the other barbers he had to let him go, and that part of Pittsford's absenteeism was caused by his being in the hospital or being unable to come to work. Dr. Gibson testified that appellee's injuries and the conditions resulting therefrom were permanent; that Pittsford could no longer

work as a barber, or as a roughneck in the oil field and could not lift and do heavy work of any kind; that he could not work as a carpenter's helper because of the activities required by such work; that he could not work as a painter for the same reason, all of which occupations Pittsford had had some some experience in; and finally, Dr. Gibson testified that the present disability or incapacity of appellee was the result of the accident sustained when the tongs hit him and pinned him up against the drawworks while he was working on the drilling rig as an employee of the Hillin Drilling Company. In addition, appellee's wife testified to his pain and disability subsequent to the accident.

We think that the evidence referred to above was sufficient to warrant the submission of and answers to the issues involving total and permanent disability.

 Appellant cites us to various cases which appellant urges indicate that it should be held that Pittsford was not totally and permanently disabled. Part of this argument is based on the fact that, assuming that there was evidence that appellee could no longer work as a barber, at the time of the trial, appellee had nevertheless secured a job as sales trainee, selling cars on an $80.00 per week guarantee. It does not appear that the cases cited by appellant are sufficiently applicable to the present case. Without discussing these cases and the fact situations therein involved, we do not think that there is any authority cited comparable to the situation in testimony before the jury in this case— to-wit, that appellee could no longer work as a barber, painter, carpenter's helper, or in the oil field business as a roughneck, and it is indicated that the work he was doing as trainee and car salesman did not cause him the pain and discomfort that trying to work as a barber or in these other occupations did. We believe the rule to be that the ability of the claimant or injured person to pursue some one type of work or economic endeavor does not pre-

clude him from recovering for total and permanent disability, and this is a logical presumption, we think, because the majority of the skills or work that appellee had been working in and trained for were no longer available to him; and he was, in fact, working and trying to hold a job in a field in which he had never worked before, to-wit, trainee and salesman in the car selling business. It is obvious that should he lose this job, according to the testimony of the doctor, he could not go back to any of his previous types of occupation. There are many cases holding similarly and, as stated in Texas Employers Insurance Association v. Smith, Tex.Civ. App., 374 S.W.2d 287 (n. w. h.), there seems to be no fixed rule of evidence other than that the injury has precluded the claimant from the usual tasks of a workman, so that he cannot find and retain employment. We also cite State Automobile & Casualty Underwriters v. Reagan, Tex.Civ.App., 337 S.W.2d 522 (n. w. h.). Examination of these and other cases convinces us as stated above, that a situation like the one here presents a fact matter to be determined as such, and we find here that there was not only evidence to sustain the finding, but ample and sufficient evidence to warrant the jury's finding that appellee was totally and permanently disabled. Appellant's first two points are therefore overruled.

Appellant's third and fourth points maintain that the trial court erred in sustaining objection to jury argument as to the failure of appellee's counsel to ask Dr. Gibson about Dr. Hooker's findings, and that the trial court further committed error in permitting appellee's counsel to argue to the jury, over objection, that appellant's counsel had tried to inject prejudice concerning Dr. Hooker's findings, and that the court was wrong in sustaining appellee's contention that he could not have called Dr. Hooker because such testimony would have been hearsay as to appellee, and implying that appellant was at fault in not having Dr. Hooker at the trial.

We believe these two points must be overruled because, in our opinion after having carefully considered the errors herein alleged in the light of the entire case as presented, we do not believe there was any error here of sufficient severity to warrant reversal or to suggest that an improper verdict had been rendered as a result of, or because of the error or errors complained of. It must be remembered that appellant did cross examine Dr. Gibson, and brought out in evidence before the jury that Pittsford had been sent to Dr. Hooker by Dr. Gibson, and that Dr. Hooker did not find any neurological involvement and, as a matter of fact, did not agree with the diagnosis and findings of Dr. Gibson; so the controversy in these two points involves only jury argument. It is evident that either side could have called Dr. Hooker, or procured and offered his testimony, but neither did. It is also in evidence that appellant argued to the jury that had it not been for the cross examination by the attorney for appellant, the jury would never have known that Dr. Hooker did not agree with Dr. Gibson. We do not find any particular harm in allowing such jury argument, and we do not find that its exclusion amounted to reversible error, as the jury had heard that which was vital—to-wit, the testimony —and these two points involve only the arguments of the lawyers relating to testimony and the absence of testimony. By the same token we do not think that the excluded statement referred to above was sufficient to permit the attorney for appellee to argue to the jury that appellant's attorney was trying to inject prejudice and misquotations. The jury had heard the testimony and, as we have pointed out, it is not to be found in the record why neither party called Dr. Hooker. With regard to this matter we think that the errors alleged therein have some merit, but are not sufficiently severe to have caused the probable rendition of an improper verdict; in other

words, they do not have the substance and strength to label them "reversible". Appellant cites McCormick & Ray, and other authorities, but we do not think they are entirely applicable as they tend to deal with the rule that an expert wtiness, having testified to an opinion, may be permitted either in direct or cross examination, to give in evidence an account of the basis upon which he founds such opinion. The whole matter is simply that of jury argument and attempted jury argument. We agree with the contention of appellant that there are cases and situations where counsel can comment on the failure of the other party to call witnesses, either expert or non-expert, but we do not believe the cases cited and the fact situations therein contained sufficiently resemble the one confronting us in this case to make them applicable or controlling here. Appellant's third and fourth points are accordingly overruled.

The appellant's fifth point charges that the trial court committed error in that the court, in his definition of "injury" and "personal injury" contained in his charge, also contained the element of aggravation, over the objection of appellant. We have studied the charge and the definitions, and while it is true that there is no pleading or proof referring to the aggravation element, the court in his charge did say, among other things:

"You are instructed that you must not take into consideration in determining the amount of incapacity, if any, any disability which was the natural and probable result of any pre-existing disease or bodily ailment of the Plaintiff."

This paragraph, along with the rest of the charge, we think disposes of any error or allegation thereof, and instructs the jury pretty clearly what to consider. The element of aggravation does not appear in the evidence or jury arguments, and we do not see how this paragraph could be harmful to the appellant. We do not find evidence anywhere that the jury considered any

possible pre-existing injury or the aggravation thereof, and for these reasons we feel that this point must also be overruled.

All of appellant's points having been overruled, the judgment of the trial court is affirmed.